UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

HOLLIS H. MALIN, JR. and )
LINDA D. MALIN, )
    )
    Plaintiffs, )
    )
v. ) No.: 3:11-CV-554
  ) (VARLAN/SHIRLEY)
JPMORGAN; JP MORGAN CHASE; )
JPMORGAN CHASE BANK; )
JPMORGAN CHASE, NATIONAL ASSOCIATION; )
and CHASE HOME FINANCE, LLC, )
    )
    Defendants. )

## MEMORANDUM OPINION AND ORDER

This civil action is before the Court on the Motion to Dismiss [Doc. 3], submitted by defendant JPMorgan Chase Bank, N.A., for itself and as successor by merger to Chase Home Finance, LLC (referred to hereinafter as "Chase" or "defendants").[1] In the motion, Chase requests that all claims of plaintiffs, Hollis and Linda Malin, proceeding *pro se*, be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Plaintiffs have submitted a response in opposition [Doc. 7], and Chase has submitted a reply [Doc. 10].

For the reasons set forth herein, the motion to dismiss will be **GRANTED in part** and **DENIED in part**.

---

[1] Chase was incorrectly named in the complaint as "JPMorgan, JPMorgan Chase, and JPMorgan Chase Bank," and is proceeding with its motion to dismiss as JPMorgan Chase Bank, N.A., for itself and as successor by merger to Chase Home Finance, LLC [Doc. 4, p. 1].

I.      **Relevant Facts and Background**[2]

On October 23, 2003, plaintiffs entered into a contract with Washington Mutual Bank ("WAMU") in which WAMU loaned plaintiffs $525,000.00 to purchase real property consisting of a house and a lot located at 809 Dry Gap Pike, Knoxville, Tennessee (the "Property") [Doc. 1-1, ¶ 5]. In connection with this loan, plaintiffs granted WAMU a note and a deed of trust [*Id.*]. According to the complaint, "WAMU was insured by the Federal Deposit Insurance Corporation (the "FDIC"), which closed WAMU in September 2008 and transferred its assets to one or more of the Defendants." [*Id.*, ¶ 4]. Plaintiffs allege that upon information and belief, prior to the closure of WAMU by the FDIC, plaintiffs' loan was assigned to and is currently held by WAMU Mortgage Pass-Through Certificate 2003-AR3 Trust [*Id.*, ¶ 9].

On February 23, 2011, prior to filing the instant case, plaintiffs filed petitions (the "petitions") under Chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of Tennessee (the "Bankruptcy Court") [Docs. 3-2, 3-3]. In the petitions, plaintiffs listed Chase as a creditor holding a secured claim or "First Mortgage" over the Property and that 2003 was the year the claim was incurred [Doc. 3-2, pp. 9, 16, 25; Doc. 3-3, pp. 6, 14]. Chase filed motions for relief from the automatic stay and abandonment in both bankruptcy cases, submitting that Chase "holds a security interest in [the Property]

---

[2]The Court takes the factual allegations in a complaint as true for purposes of a motion to dismiss pursuant to Rule 12(b)(6). *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (noting that, "when ruling on a defendant's motion to dismiss, a judge must accept as true all the factual allegations contained in the complaint") (citations omitted); *see also Zaluski v. United Am. Healthcare Corp.*, 527 F.3d 564, 570 (6th Cir. 2008).

2

. . . by virtue of a Deed of Trust[.]" [Doc. 3-4]. In the motions, Chase asserted that the automatic stay should be terminated for cause due to lack of adequate protection of its security interest, because there was little or no equity in the Property, and because the Property was burdensome and of inconsequential value to the bankruptcy estate [*Id.*].

On April 28, 2011, the Bankruptcy Court granted Chase's motions for relief from the automatic stay, noting that Chase had asserted a valid, properly perfected deed of trust in the Property, and finding that sufficient grounds existed for termination of the automatic stay for cause [Doc. 3-5]. Chase submits that following the lifting of the automatic stay in regard to the Property, plaintiffs were discharged from their respective bankruptcy proceedings [Doc. 4, p. 4].

On October 17, 2011, plaintiffs filed this action in the Chancery Court of Knox County, Tennessee, alleging five causes of action: (1) mistaken and erroneous representations as to standing to foreclose; (2) predatory lending practices; (3) a violation of the Fair Debt Collection Practices Act (the "FDCPA"), including a claim under the Real Estate Settlement Practices Act ("RESPA"); (4) unfair business practices; (5) and to quiet title [Doc. 1-1]. In their complaint, plaintiffs allege that Chase is not the holder and is not in possession of the note secured by the Property, that Chase has pursued non-judicial foreclosure "without right under law," and that Chase has misrepresented that it has the right to payment and to conduct a non-judicial foreclosure sale in place of WAMU [*Id.*, ¶¶ 6, 7].

Chase removed the state-court action to this Court [*see* Doc. 1], and filed the motion to dismiss [Doc. 3], seeking dismissal of plaintiffs' claims on two grounds. First, because

plaintiffs' causes of action related to the allegation that Chase lacks the authority to foreclose on the Property are barred by res judicata and/or collateral estoppel given the Bankruptcy Court's orders lifting the automatic stay. Second, because the purchase and assumption agreement (the "PAA") entered into on September 25, 2008 between Chase and the FDIC, as receiver of WAMU, provides that Chase is not responsible for claims brought by borrowers related to any action and/or inaction of WAMU. Plaintiffs' claims, Chase asserts, with the exception of their first and fifth causes of action, stem entirely from the origination of the loan and/or their interactions with WAMU prior to September 25, 2008.

In response [Doc. 9], plaintiffs contend that given their allegation that Chase is not a holder of the promissory note secured by the Property, their claims do not involve WAMU and Chase cannot escape liability under the PAA. Relying on *Grella v. Salem Five Cent Sav. Bank*, 42 F.3d 26 (4th Cir. 1994), plaintiffs also assert that res judicata and/or collateral estoppel do not preclude them from disputing whether Chase is a holder or is in possession of the promissory note secured by the Property.

In reply, Chase reiterates its argument that based on the terms of the PAA, it is not liable for any alleged actions or inaction of WAMU prior to September 25, 2008. Chase also argues that *Grella* is distinguishable from the instant case. Finally, Chase raises the argument that plaintiffs' claims are barred by the doctrine of judicial estoppel.

While Chase raised, in its motion to dismiss, the issue of the preclusive effects of res judicata and collateral estoppel on plaintiffs' claims, Chase did not raise the judicial estoppel argument until its reply brief. It is well-settled that a movant cannot raise new issues for the

4

first time in a reply brief because consideration of such issues "deprives the non-moving party of its opportunity to address the new arguments." *Cooper v. Shelby Cnty.*, No. 07-2283-STA-cgc, 2010 WL 3211677, at *3 n.14 (W.D. Tenn. Aug. 10, 2010) (collecting Sixth Circuit and district court cases discussing this principle). "Further, the non-moving party ordinarily has no right to respond to the reply brief, at least not until oral argument." *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008) (citation omitted). The Local Rules of this District also provide that "reply briefs are not necessary and are not required by Court. A reply brief shall . . . directly reply to the points and authorities contained in the answering brief." E.D. TN. LR 7.1(c).[3] Accordingly, as a matter of litigation fairness and procedure, the Court declines, at this time, to address this argument.[4]

## II. Standard of Review

Chase has moved for dismissal of plaintiffs' claims pursuant to a Rule 12(b)(6) motion. While Chase has relied on documents outside the pleadings—specifically, documents filed in prior bankruptcy proceedings—the Court concludes that these documents do not convert the motion to dismiss into a motion for summary judgment pursuant to Rule 12(d). The submitted copies of plaintiffs' bankruptcy petitions, the motions for relief from the automatic stay, and the orders of the Bankruptcy Court, are matters of public record and

---

[3]The Local Rules provide a means by which a party may move the Court to file a supplemental brief or file a supplemental brief without seeking leave of Court to call attention to developments occurring after a party's final brief is filed. E.D. TN. LR 7.1(d).

[4]Thus, this memorandum opinion and order does not address the relative merits of the judicial estoppel argument.

5

therefore the Court's taking of judicial notice of the bankruptcy filings do not convert this motion into one for summary judgment. *Nieman v. NLO, Inc.*, 108 F.3d 1546, 1554 (6th Cir. 1997); *Signature Combs, Inc. v. United States*, 253 F. Supp. 2d 1028, 1041 n. 5 (W.D.Tenn. 2003).

When reviewing a Rule 12(b)(6) motion to dismiss, the Court must construe the complaint in the light most favorable to the plaintiff, accept the complaint's factual allegations as true, *Thurman v. Pfizer, Inc.*, 484 F.3d 855, 859 (6th Cir. 2007), and determine whether the plaintiff has pleaded "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint need only contain a "short and plain statement of the claim showing that the pleader is entitled to relief," *Ashcroft v. Iqbal*, — U.S. —, —, 129 S.Ct. 1937, 1940 (2009) (quoting Fed. R. Civ. P. 8(a)(2)), but that statement must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

In deciding a motion to dismiss, the question is not whether a plaintiff will ultimately prevail but whether the plaintiff is entitled to offer evidence to support the claims made in the complaint. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002). At the same time, bare assertions of legal conclusions are insufficient, and the "complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988). Unsupported allegations and legal conclusions "masquerading as factual conclusions" are not sufficient. *Mezibov v. Allen*, 411 F.3d 712, 716 (6th Cir. 2005).

6

### III. Analysis

#### A. Claims Arising Out of the Alleged Conduct of WAMU

In their second cause of action, plaintiffs allege that WAMU engaged in predatory lending practices and that Chase, as successor to WAMU, is liable for its actions [Doc. 1-1, ¶ 15]. Plaintiffs allege that WAMU engaged in misrepresentations that resulted in plaintiffs entering into a loan agreement for which they were not qualified, that WAMU had an appraisal on the Property done on September 3, 2003 that improperly inflated its value, that escalating payments and increasing interest rates were not disclosed to plaintiffs, and that defendants engaged in a conspiracy to deceive plaintiffs into taking out the loan, and that defendants knew, prior to the origination of the loan, that plaintiffs were not qualified to make payments under the terms of the loan [*Id.*, ¶¶ 15-24]. In the third cause of action, plaintiffs allege that defendants violated the FDCPA and RESPA [*Id.*, ¶¶ 26, 27]. Plaintiffs have not, however, alleged any specific provisions under the FDCPA or RESPA or alleged any facts against Chase specifically under these acts. Rather, the only allegation in the complaint that pertains to these acts is plaintiffs' allegation that escalating payments and/or increases in the interest rate were not properly disclosed [*Id.*, ¶ 20]. In the fourth cause of action, plaintiffs allege that defendants engaged in "unlawful business acts and/or practices" with regard to the failure to comply with the disclosure requirements of the FDCPA and RESPA and that defendants' misconduct has led to an unfair competition advantage over plaintiffs because plaintiffs were unaware of disclosure requirements [*Id.*, ¶¶ 28, 29].

7

Chase contends that it is not liable for any of WAMU's alleged conduct that occurred prior to September 25, 2008, when Chase purchased certain asserts of WAMU from the FDIC. Chase therefore argues that plaintiffs' second, third, and fourth causes of action should be dismissed because the alleged conduct of WAMU, if proved in fact, cannot be the basis for a cause of action against Chase. In response, plaintiffs assert that their claims do not involve WAMU and that the PAA argument is a red herring.

The PAA between the FDIC and Chase provides, in relevant part:

> **2.5 Borrower Claims.** Notwithstanding anything to the contrary in this Agreement, any liability associated with borrower claims for payment of or liability to any borrower for monetary relief, or that provide for any other form of relief to any borrower, whether or not such liability is reduced to judgment, liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, legal or equitable, judicial or extra-judicial, secured or unsecured, whether asserted affirmatively or defensively, related in any way to any loan or commitment to lend made by [WAMU] prior to failure, or to any loan made by a third party in connection with a loan which is or was held by [WAMU], or otherwise arising in connection with [WAMU's] lending or loan purchase activities are specifically not assumed by [Chase].

[Doc. 3-1].[5] Courts interpreting the PAA have held that Chase "'expressly disclaimed assumption of liability arising from borrower claims . . . [t]his section leaves the FDIC as the responsible party with respect to those claims.'" *Hilton v. Wash. Mut. Bank*, No. 09-1191, 2009 WL 3485953, at *3 (N.D. Cal. Oct. 28, 2009) (internal quotations and citation omitted); *see also Yeomalakis v. FDIC*, 562 F.3d 56, 60 (1st Cir. 2009) (upholding the district court's

---

[5]The PAA is a public document which the Court may consider in deciding the motion to dismiss. *Kostrzewa v. City of Troy*, 247 F.3d 633, 644 (6th Cir. 2001).

denial of the plaintiff's motion to substitute Chase as a party for the FDIC because the FDIC is the party liable for WAMU's alleged misconduct under the PAA); *Harajli v. Wash. Mut. Bank*, No. 09-14598, 2010 WL 2813281, at *3 (E.D. Mich. July 16, 2010) (concluding that Chase, in purchasing some of WAMU's assets and liabilities from the FDIC, did not assume liability for WAMU's alleged misconduct in connection with the plaintiff's claim).

Here, plaintiffs have alleged that they entered into the loan agreement with WAMU on October 23, 2003, a date prior to September 25, 2008 [Doc. 1-1, ¶ 5]. In addition, plaintiffs' factual allegations supporting their second, third, and fourth causes of action arise out of either the origination of the loan with WAMU, the terms disclosed or not disclosed to plaintiffs at the time plaintiffs entered into the loan agreement, and an appraisal that allegedly occurred in September 2003 [*Id.*, ¶¶ 15-20, 24 (alleging that defendants engaged in a "conspiracy to unlawfully deceive Plaintiff[s] into taking out the subject loan . . . was willful and wanton, justifying an award for punitive damages.")].

In *Gossen v. JPMorgan Chase Bank*, — F. Supp. 2d —, 2011 WL 4939828 (W.D. Wash. Oct. 18, 2011), the plaintiffs brought claims for wrongful foreclosure, quiet title, and violations of RESPA and the Truth in Lending Act, among others, against WAMU and Chase, contending that WAMU had failed to "identify loan charges, fees, and terms at the origination of the loan agreement." *Id.* at *3. The Western District of Washington dismissed the plaintiffs' claims, relying on Article 2.5 of the PAA and noting that Chase expressly did not assume any WAMU liabilities involving claims by borrowers and that Chase "is not a successor to [WAMU] for liabilities related to [the plaintiffs'] loan origination." *Id.* at *4.

9

The *Gossen* court also noted that there were no alleged facts supporting the plaintiffs' claims for violations of RESPA and the Truth in Lending Act. *Id*.

Upon review, and similar to *Gossen*, the Court finds plaintiffs' second, third, and fourth causes of action do not confer a basis of potential liability upon Chase. All the allegations in plaintiffs' complaint relate to conduct that allegedly occurred prior to September 25, 2008. As found by the other federal courts that have addressed this issue, *Gossen*, 2011 WL 4939828, at *5; *Mazur v. Wash. Mut. Bank, F.A.*, No. 09-13371, 2011 WL 108926, at *5 (E.D. Mich. Jan. 10, 2011); *Javaheri v. JPMorgan Chase Bank, N.A.*, No. CV10-08185 ODW (FFMx), 2011 WL 97684, at *3 (C.D. Cal. Jan. 11, 2011); *McCann v. Quality Loan Serv. Corp.*, 729 F. Supp. 2d 1238, 12441 (W.D. Wash. 2010), Chase explicitly did not assume, via the PAA, liability for any claims of borrowers in positions similar to that occupied by plaintiffs.

Accordingly, plaintiffs' second, third, and fourth causes of action against Chase will be **DISMISSED**.

### B. Res Judicata and/or Collateral Estoppel

The Court now turns to plaintiffs' first and fifth causes of action claiming mistaken and erroneous representations as to standing to foreclose and to quiet title. Chase has requested dismissal of these claims under the doctrines of res judicata and/or collateral estoppel because Chase contends that plaintiffs are attempting to re-litigate the issue of whether Chase has the right to foreclose. Chase asserts that this issue was determined in plaintiffs' prior bankruptcy proceedings in the context of the Bankruptcy Court's orders

10

Case 3:11-cv-00554 Document 11 Filed 03/12/12 Page 10 of 18 PageID #: 249

granting Chase relief from the automatic stay.[6] In response, plaintiffs assert that the first and fifth causes of action are "based on the factual premise that [Chase is] not the holder of the promissory note secured by the [Property]" [Doc. 9, p. 2]. Plaintiffs contend that neither res judicata nor collateral estoppel preclude them from disputing, in this action, whether Chase is the holder or possesses the promissory note securing the Property. Plaintiffs assert that Chase's attempt to bar plaintiffs' claims based on these doctrines and the Bankruptcy Court's orders is similar to a strategy that was rejected in *Grella* and should similarly be rejected by this Court.

Collateral estoppel bars re-litigation of an issue if it was raised in an earlier case between the same parties, actually litigated, and necessary to the judgment in the earlier case. *Rally Hill Prods., Inc. v. Bursack (In re Busack)*, 65 F.3d 51, 54 (6th Cir. 1995) (citing *Massengill v. Scott*, 738 S.W.2d 629, 632 (Tenn. 1987)). Res judicata, or claim preclusion,

---

[6]After a debtor files a bankruptcy petition, he or she is protected by the automatic stay provision of 11 U.S.C. § 362(a). To obtain relief from an automatic stay, a creditor may bring a request pursuant to 11 U.S.C. § 362(d). Section 362(d) provides as follows:

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying or conditioning such stay-
>
> > (1) for cause, including the lack of adequate protection of an interest of such party in interest; or
> >
> > (2) with respect to a stay of an act against property, if -
> >
> > > (A) the debtor does not have an equity in such property; and
> > >
> > > (B) such property is not necessary to an effective reorganization.

11 U.S.C. § 362(d).

generally refers to the effect of a prior judgment in foreclosing successive litigation of the very same claim, whether or not re-litigation of the claim raises the same issues as the earlier suit. *New Hampshire v. Maine*, 532 U.S. 742, 748-49 (2001). In the Sixth Circuit, a claim is barred by the res judicata effect of prior litigation if each of these four elements are established: "'(1) a final decision on the merits by a court of competent jurisdiction; (2) a subsequent action between the same parties or their 'privies'; (3) an issue in the subsequent action which was litigated or which should have been litigated in the prior action; and (4) an identity of the causes of action.'" *Browning v. Levy*, 283 F.3d 761, 771 (6th Cir. 2002) (citing *Bittinger v. Tecumseh Prods. Co.*, 123 F.3d 877, 880 (6th Cir.1997)). A party asserting res judicata as a defense bears the burden of proving each element. *Id.* at 772.

The case relied upon by plaintiffs, *Grella v. Salem*, involved a Chapter 7 trustee's attempt to avoid a bank's unperfected security interest in property of the bankruptcy estate on preferential transfer grounds. 42 F.3d 26. Following the debtor's filing of a bankruptcy petition, the bank filed a motion for relief from the automatic stay in regard to seventeen notes that were a part of the property of the bankruptcy estate. *Id.* at 27. In the motion for relief from the automatic stay, the bank claimed to have a "perfected security interest" because it was "in sole and exclusive possession" of the original seventeen notes. *Id.* The bank did not state or allege any other details regarding the bank's allegedly perfected security interest in the notes. *Id.* The trustee did not contest the bank's motion, but stated he had not had sufficient time to determine the existence of possible defenses to the bank's claim. *Id.* at 28. After a hearing, the bankruptcy court granted the bank's motion and lifted the stay in

12

regard to the notes. *Id.* In neither the hearing nor the order did the bankruptcy court make any findings about the status of the bank's security interest. *Id.*

The bank filed an adversary proceeding to determine the validity of its lien, alleging for the second time that it had a perfected security interest in the seventeen notes because it was in sole and exclusive possession of the originals. *Id.* at 19. The trustee filed an answer and counterclaim against the bank alleging that its interest in one of the notes was avoidable as a preferential transfer. *Id.* In opposing the trustee's counterclaim, the bank argued that the trustee was barred from pursuing his preference action based on either claim or issue preclusion because the trustee had not objected to the bank's motion for relief from the automatic stay, and because the validity of the bank's security interest had been decided when the bankruptcy court granted relief from the automatic stay. *Id.*

Based on an issue preclusion analysis, the First Circuit Court of Appeals held that a determination on a motion for relief from an automatic stay is limited in scope and does not have preclusive effect on a trustee's subsequent preferential transfer or avoidance claims. *Id.* at 35. The court of appeals noted that Congress created the provision allowing relief from the automatic stay for certain creditors if grounds for relief are present, including "the adequacy of protection for the creditor, the debtor's equity in the property, and the necessity of the property to an effective reorganization." *Id.* at 31. The court of appeals distinguished a motion for relief from the automatic stay from a preferential transfer claim, noting the summary nature of a relief from stay proceeding:

13

> [A] motion for relief from [the automatic] stay should seek only to determine whether the party seeking relief has a colorable claim to property of the estate. The statutory and procedural schemes, the legislative history, and the case law all direct that the hearing on a motion to lift the stay is not a proceeding for determining the merits of the underlying substantive claims, defenses, or counterclaims. Rather, it is analogous to a preliminary injunction hearing, requiring a speedy and necessarily cursory determination of the reasonably likelihood that a creditor has a legitimate claim or lien as to a debtor's property. If a court finds that likelihood to exist, this is not a determination of the validity of those claims, but merely a grant of permission from the court allowing that creditor to litigate its substantive claims elsewhere without violating the automatic stay.

*Id.* at 33-34. The *Grella* court also pointed out that the bankruptcy court's order lifting the automatic stay did not make any findings about the status of the bank's security interest in the seventeen notes and that the bankruptcy court "did not, and indeed, could not adjudicate the substantive merits of either the creditor's claim or any possible defenses or counterclaims." *Id.* at 35.

*In re Lebbos* ("*Lebbos*"), a case from the Eastern District of Michigan, involves facts similar to those in *Grella*.[7] *Lebbos*, 455 B.R. 607 (Bankr. E.D. Mich. 2011). In *Lebbos*, the district court determined that a trustee's preferential transfer and avoidance claims in an adversary proceeding were not barred on res judicata grounds when the trustee had not opposed or otherwise responded to the bank's motion for relief from the automatic stay in the prior bankruptcy proceeding. *Id.* at 610, 614-16. Central to the *Lebbos* court's holding was that the third element of the res judicata analysis was not satisfied, that is, whether the

---

[7]In *Grella*, the First Circuit's analysis was based on issue preclusion. *Lebbos*, 455 B.R. at 613. The *Lebbos* court proceeded on a res judicata analysis. *Id.* at 612.

issues raised in the adversary proceeding by the trustee were litigated or could have been litigated at the time the bank moved for relief from the automatic stay. *Id.* at 612. Finding the facts and reasoning of the *Grella* court persuasive, *id.* at 614, the *Lebbos* court noted that while the trustee *could* have asserted his preferential transfer and avoidance claims as counterclaims to the bank's motion for relief from the automatic stay, the trustee was not required to do so, nor was the bankruptcy court required to rule on such claims. *Id.* at 615. As determined by the *Lebbos* court, "any determination under § 362(d) is narrowly limited to whether a creditor has a colorable claim against property of the estate. Any decision [on whether the stay should be lifted] would be made solely on the statutory grounds expressed in § 362(d). The possible avoidability of a transfer. . . or a lien avoidance action . . . are beyond the scope of a court's limited inquiry under § 362(d)." *Id.* (citing *Grella*, 42 F.3d at 32, *In re Vitreous Steel Prod. Co.*, 911 F.2d 1223, 1234 (7th Cir. 1990) (noting that questions of preferential transfers are not generally at issue in a § 362 hearing, but only whether there is a colorable claim on property)). Applying the reasoning of *Grella*, the *Lebbos* court found no preclusive effect on the issues raised by the trustee in the adversary proceeding given the circumstances of the lifting of the automatic stay. *Id.* at 614.

After considering the case law summarized above, the Court concludes that the third element of res judicata is not satisfied in this case. For the third element of res judicata to be established, the Court must determine whether the issues underlying plaintiffs' first and fifth causes of action—standing to foreclose and whether Chase is a holder and in possession of the note securing the Property—were litigated or could have been litigated at the time

15

Chase moved for relief from the automatic stay. It is apparent from plaintiffs' bankruptcy petitions that both plaintiffs averred in those petitions that Chase was a secured creditor in regard to the Property and a First Mortgage holder. In addition, in the motions to lift the automatic stay, Chase alleged that it was a "secured creditor" holding a security interest in the Property and that it was entitled to relief from the stay based on the statutory grounds provided under § 362(d)(1) and (2). Neither plaintiffs nor the trustee objected to the motions for relief from the stay. In the Bankruptcy Court's orders granting Chase relief from the automatic stay, the Bankruptcy Court noted that Chase had asserted a "valid, properly perfected" security interest in the Property in support of their motions for relief from the automatic stay and found that grounds existed under 11 U.S.C. § 362(d)(1) for terminating the stay for cause. Unlike this case, neither *Grella* nor *Lebbos* contain facts regarding any statements made under oath by the debtor with regard to the security interests in question, such as statements by a debtor in a bankruptcy petition. However, the Court finds the reasoning of *Grella* and *Lebbos*, along with those courts' considerations of similar circumstances to those presented in this case, to militate against a finding that res judicata or collateral estoppel apply to these facts.

First, similar to *Lebbos*, in the motions for relief from the automatic stay, Chase alleged only that it held a "security interest" in the Property by virtue of the deed of trust. *Id.*, 455 B.R. at 615 (stating that the bank "merely alleged that it was a 'holder of a mortgage on property owned by the Debtor'"). Second, similar to *Lebbos*, Chase did not allege that it held a perfected interest in the Property, nor did it allege any other facts about the validity

16

of its security interest. *Id.* (stating that the bank "did not allege that it held a perfected interest in the Debtor's property. Nor did it allege any other facts about the validity of its security interest"). Third, similar to *Lebbos*, Chase alleged that it was entitled to relief from the automatic stay based on the grounds provided in § 362(d)(1) and (2). *Id.* (stating that the bank "alleged facts asserting that it was entitled to relief under § 362(d)(1) and (2)"). Finally, while the Court notes that the Bankruptcy Court's orders granting the motions for relief from the automatic stay state that "[i]t appears that [Chase] asserts a valid, properly perfected Deed of Trust" [Doc. 3-5, p. 1; Doc. 3-6, p. 1], the only relief actually granted by the Bankruptcy Court is that the automatic stay pursuant to § 362 was terminated, the stay waived as to the Property, and the trustee's interest in the Property abandoned. *Lebbos* is somewhat distinguishable on this point, as the *Lebbos* court noted that the bankruptcy court's order was devoid of any findings as to the validity of or the avoidability of the bank's interest in the property, *id.* at 616, however, given the other relevant circumstances, the Court does not find this sufficient for res judicata purposes.

In sum, the Court agrees with the reasoning of *Grella* and *Lebbos* that "any determination under § 362(d) is narrowly limited to whether a creditor has a colorable claim against property of the estate . . . [and a]ny decision would be made solely on the statutory grounds expressed in § 362(d)." *Lebbos*, 455 B.R. at 615; *see also Grella*, 42 F.3d at 32. Similarly, because the Bankruptcy Court's orders were pursuant to § 362 only, the Court does not find that collateral estoppel, which requires that the precluded issue be raised and necessary to the prior judgment, operates to bar plaintiffs' claims. Accordingly, the Court

17

concludes that neither res judicata nor collateral estoppel operate to bar plaintiffs' first and fifth causes of action and the motion to dismiss will be **DENIED** in regard to these claims.

## IV. Conclusion

For the reasons stated above, Chase's motion to dismiss [Doc. 3] is **GRANTED in part**, to the extent that plaintiffs' second, third, and fourth causes of action are **DISMISSED**, and **DENIED in part**, to the extent that plaintiffs' first and fifth causes of action will be permitted to go forward.

IT IS SO ORDERED.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE