UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| HOLLIS H. MALIN, JR., and | ) | |
| LINDA D. MALIN, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No.: 3:11-CV-554 |
| | ) | (VARLAN/GUYTON) |
| JP MORGAN CHASE BANK, N.A., | ) | |
| *as successor in interest*, | ) | |
| CHASE HOME FINANCE, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

This civil action is before the Court on the Motion for Summary Judgment of
Defendant JPMorgan Chase Bank, N.A., for Itself and as Successor by Merger to Chase
Home Finance, LLC ("Chase") [Doc. 19]. Plaintiffs initially responded in opposition
[Docs. 20, 21], and Chase filed a reply [Doc. 24]. Plaintiffs filed an amended response
[Doc. 43], with Chase again filing a reply [Doc. 44]. Plaintiffs then filed a supplemental
response in opposition to Chase's motion for summary judgment [Doc. 63], with an
additional affidavit attached. Chase filed an additional reply [Doc. 69].[1] The Court has
thoroughly reviewed and considered all of the relevant filings and, for the reasons set
forth below, will grant Chase's motion.

---

[1] The Court acknowledges that plaintiffs have requested oral argument on this motion;
however, upon review of the record before it, the Court finds that oral argument would not
substantially assist in the determination of the motion.

# I. Relevant Facts and Background[2]

On October 23, 2003, plaintiffs entered into an Adjustable Rate Note (the "Note") and Deed of Trust (the "Deed of Trust") with Washington Mutual Bank ("WAMU"). WAMU loaned plaintiffs $525,000.00 to purchase real property consisting of a house and lot located at 809 Dry Gap Pike, Knoxville, Tennessee (the "Property"), and plaintiffs spent the majority of the loan amount renovating the home.

The Note provides that WAMU may transfer the Note and instructs, "The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the 'Note Holder'" [Doc. 19-3, p. 1]. The Note additionally states, "In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument") dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note" [*Id.*, p. 5]. Plaintiffs executed the Deed of Trust, which secures the Note and gives the Note Holder the right to foreclose on the Property in the event that plaintiffs default on their payment obligations required by the Note.

---

[2] In plaintiffs' amended response [Doc. 43], they assert that they adopt Chase's recitation of the facts, except as specifically noted in their response. Accordingly, the Court has reviewed the facts as set forth in both briefs and has incorporated the additional facts set forth by plaintiffs as appropriate. The Court notes that, in light of the fact that plaintiffs do not dispute that they have defaulted on the Note, several of the Note provisions recited by plaintiffs are not relevant to the determination of the instant motion and are not included in this section.

Following the failure of Mr. Malin's jewelry business, plaintiffs were in default on their WAMU loan payments. Plaintiffs entered into a Loan Modification Agreement with WAMU, specifically modifying the terms of the Note with respect to the monthly payments on or about August 1, 2008. The Loan Modification Agreement provides that, to the extent not modified by the modification agreement, the terms of the Note would remain in effect and plaintiffs would remain obligated under the Note. Plaintiffs defaulted on their payment obligations under the Loan Modification Agreement as well.

On September 25, 2008, the Federal Deposit Insurance Corporation ("FDIC"), as Receiver of WAMU, and Chase entered into a Purchase and Assumption Agreement ("PAA"). Under the terms of the PAA, Chase acquired all loans and loan commitments of WAMU and became the owner of those loan and loan commitments [Doc. 19-6, 19-7]. Chase asserts that plaintiffs produced the affidavit of Robert C. Shoppe [Doc. 19-7], authorized representative of the FDIC, stating that, pursuant to the terms of the PAA, JPMorgan Chase acquired all assets, including loan and loan commitments, of WAMU, making JPMorgan Chase the owner of the loans by operation of law. In their response, however, plaintiffs list several portions of the PAA and assert that "[i]f plaintiffs' promissory note is not on any of those described documents . . . Chase did not acquire ownership of plaintiffs' promissory note and deed of trust" [Doc. 43, p. 7].

On October 10, 2008, plaintiffs received a letter from Chase, which informed them that Chase had obtained their loan from WAMU, and plaintiffs thereafter sent any required monthly payments to Chase. After defaulting on their monthly payments, plaintiffs tried to modify the terms of their loan with Chase, and Chase allowed plaintiffs to pay lower monthly payments while Chase decided whether plaintiffs qualified for a permanent loan modification. Plaintiffs did not ultimately qualify for such a modification. Plaintiffs made their last payment on the Note in February 2010, and it is now undisputed that the loan is in default, with plaintiffs not having paid back the loan in full.

On February 23, 2011, prior to the filing of the instant suit, Mr. Malin filed a petition under Chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of Tennessee (the "Bankruptcy Court"). In the petition, Mr. Malin listed Chase as a "Secured Creditor" holding a secured claim or "First Mortgage" over the Property. Mr. Malin's bankruptcy was discharged, with his debt to various creditors, including Chase, extinguished.

Plaintiffs filed the instant case in Knox County Chancery Court on October 17, 2011, and the case was removed to this Court. The Court has previously dismissed several of plaintiffs' claims [Doc. 11], and the surviving claims include that Chase does not have standing to foreclose on the Property and an action for quiet title. Plaintiffs' claims are primarily based upon allegations that, prior to the point when WAMU was put

4

Case 3:11-cv-00554-TAV-HBG  Document 101  Filed 07/08/13  Page 4 of 23  PageID #: 1375

into Receivership of the FDIC, plaintiffs' loan was assigned to the "WAMU Mortgage Pass-Through Certificates 2003-AR3 Trust." Plaintiffs admit that they have not seen any documents supporting this allegation.

Chase has submitted the affidavit of Kendall Foster, swearing upon oath and from her personal knowledge, that she is employed by Chase as an Assistant Secretary [Doc. 19-6]. The affidavit submits that, as a regular part of her job functions, Ms. Foster is "familiar with business records maintained by Chase in connection with owning, holding, and servicing mortgage loans. These business records include, but are not limited to, original mortgage loan documents, data compilations, and electronically imaged documents" [*Id.*, ¶ 3]. The affidavit states that those business records are kept in the ordinary course of business activities regularly conducted by Chase. The affidavit submits that on September 25, 2008, Chase entered into a PAA with the FDIC, Receiver of WAMU, and confirms that a true and correct copy of that PAA is a part of the record before the Court [Doc. 3-1]. Ms. Foster submits that:

> 5.     Based upon a review of Chase's business records kept in the ordinary course of its business, Chase is in possession of, controls, and holds the original Adjustable Rate Note (the "Note"), Loan Number 0082067992, dated October 23, 2003, between Hollis H. Malin, Jr. and Linda D. Malin, as borrowers, and Washington Mutual Bank, FA ("WAMU"), as the lender, related to real property located at 809 Dry Gap Pike, Knoxville, Tennessee 37918. A true and exact copy of the original Note is attached as **Exhibit C** to Chase's Motion for Summary Judgment in this matter.

6.    On Page 6 of 6 of the original Note, there is an endorsement in blank from WAMU, executed by "Jess Almanza, VP."

7.    Based upon a review of Chase's business records kept in the ordinary course of its business, Chase is in possession of, controls, and holds the original Deed of Trust and Adjustable Rate Rider (collectively "Deed of Trust"), Loan Number 0082067992, dated October 23, 2003, between Hollis H. Malin, Jr. and Linda D. Malin, as borrowers, and WAMU, as the lender, related to real property located at 809 Dry Gap Pike, Knoxville, Tennessee 37918.  A true and exact copy of the original Deed of Trust is attached as **Exhibit D** to Chase's Motion for Summary Judgment in this matter.

8.    Based upon a review of Chase's business records kept in the ordinary course of its business, Chase is in possession of, controls, and holds the Loan Modification Agreement (the "Loan Modification Agreement"), Loan Number 0082067992, with the effective date of August 1, 2008, between Hollis H. Malin, Jr. and Linda D. Malin, as borrowers, and WAMU, related to real property located at 809 Dry Gap Pike, Knoxville, Tennessee 37918.    A true and exact copy of the Loan Modification Agreement is attached as **Exhibit E** to Chase's Motion for Summary Judgment in this matter.

9.    Based upon a review of Chase's business records kept in the ordinary course of its business, the loan evidenced by the Note, Deed of Trust, and Loan Modification Agreement was purchased by Chase, along with all other loans and loan commitments of WAMU, pursuant to the Purchase and Assumption Agreement between Chase and the Federal Deposit Insurance Corporation, as Receiver of WAMU.

10.    Chase has sent the original Note, Deed of Trust, and Loan Modification Agreement to its counsel in this matter.  Chase has directed its counsel to personally produce the originals of these documents to the Court, preferably in Chambers, should the Court desire to inspect the same.

6

[*Id.*, ¶¶ 5-10].  Plaintiffs point out that Ms. Foster's affidavit does not assert that she is familiar with WAMU's business records or whether WAMU owned the Note and Deed of Trust when the FDIC became its Receiver.[3]

At the respective depositions of plaintiffs, counsel for Chase showed them what Chase claims is the original Note, on legal size paper, the original Deed of Trust, on legal size paper, and the Loan Modification Agreement.  Mr. Malin testified that he believes that the Note was executed on legal size paper, but he refused to admit the Note was the original.  Mr. Malin did testify that if Chase were to say that the Note presented was the original, while he is not an expert, he would suspect that it was the original.  Mr. Malin

_____

[3] In plaintiffs' original and first amended responses, they requested additional time under Rule 56(d) to conduct discovery, specifically to take the deposition of Kendall Foster.  Plaintiffs represent that the deposition of Ms. Foster was taken on March 8, 2013, via telephone.  In plaintiffs' final responsive memorandum [Doc. 63], filed on the March 15, 2013 deadline imposed by Magistrate Judge Guyton for the final filing of documents related to the summary judgment motion, plaintiffs wrote that once they received the transcript of Ms. Foster's deposition they would move the Court to allow its late filing for consideration.  Plaintiffs' counsel represented that to the best of his memory, he believed that "at one point in Ms. Foster's deposition, she acknowledged that she was actually *unable* to confirm that true and exact copies of the documents were attached to various other filings with this court" [Doc. 63, p. 2 (emphasis in original)].  Counsel then wrote, "when Ms. Foster was questioned by her attorney, she testified that she *was* able to confirm true and exact copies of the documents were attached to various other filings with this court" [*Id.* (emphasis in original)].  Plaintiffs thus assert that a dispute exists as to whether the Court has been provided true and correct copies of relevant documents.  Chase responds to this argument [Doc. 69] that Ms. Foster testified only that she was not physically sitting next to defense counsel when he filed the motion for summary judgment but testified that she had previously reviewed the original Note, Deed of Trust, and Loan Modification Agreement.  Chase also asserts that Ms. Foster testified that when she reviewed her affidavit prior to signing it, she had copies of the originals of the documents provided to her and that they all appeared to be true and correct copies of the original documents in Chase's collateral file.  Chase cites directly to pages in Ms. Foster's deposition transcript; however, neither party ever submitted or filed the deposition transcript with the Court.  Accordingly, any attempt by plaintiffs to show a genuine issue of material fact as to the authenticity of the Note and corresponding documents based on counsel's memory of Ms. Foster's deposition testimony, without any citation to evidence of record, fails.

7

further stated that the Note presented looked like the original document, and he testified the same with regard to the Deed of Trust presented. Mrs. Malin noted that the Note, Deed of Trust, and Loan Modification Agreement felt "bumpy" at the signature lines, and she testified that the signatures on the documents appeared to be hers. Mrs. Malin testified that she believed the Note was probably the original.

Attached to plaintiffs' response is the scanned and emailed copy of the Note sent from defense counsel to plaintiffs' counsel [Docs. 21-3, 21-6, 21-9], the October 12, 2012 email requesting a scanned version of the Note, so that Larry Miller, Ph.D, could review it [Doc. 21-2], a screen shot taken by Adam Malin, plaintiffs' son, of the emailed Note viewed in Adobe Illustrator [Doc. 21-6], an affidavit of Adam Malin [Doc. 21-5], an affidavit of Linda Malin [Doc. 21-8], an affidavit of plaintiffs' counsel [Doc. 21-1], and Chase's responses to plaintiffs' interrogatories and request to produce [Doc. 21-4]. Adam Malin's affidavit indicates that he obtained the PDF document of the Note sent from defense counsel to plaintiffs' counsel and that he believes that, in the computer program Adobe Illustrator, the document has at least four "layers" rather than the one layer that he asserts a scanned document should have. Based on this, Adam Malin asserts "there is a question whether or not Exhibit A is a scan of my parents' original promissory note" [Doc. 21-5].[4] In the attached discovery responses [Doc. 21-4], plaintiffs questioned

---

[4] In Chase's reply [Doc. 44], it asserts that the affidavit of Adam Malin should be stricken and that it does not create an issue of fact. The Court will address this argument below.

whether the Note was "ever destroyed and/or recreated by you or your predecessor in interest" [Doc. 21-4, p. 6]. Chase responded:

> No. This fact was confirmed in a [sic] October 24, 2012 email from Plaintiffs' counsel, in which Larry S. Miller, Ph.D, a Professor at the Department of Criminal Justice & Criminology at East Tennessee State University, noted that "I went over the signatures and also sent it to a document examiner colleague to make sure I wasn't missing something and we both agreed that we can't see anything wrong or suspicious. The signatures are not autopen and are not "cut and paste" signatures. They are fluid and signed with normal speed so there's no evidence of tracing or simulation."

[*Id.*, pp. 6-7; Doc. 24-2].[5]

## II. Standard of Review

Summary judgment under Rule 56 of the Federal Rules of Civil Procedure is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of establishing that no genuine issues of material fact exist. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 n.2 (1986); *Moore v. Phillip Morris*

---

[5] Because the Court has affirmed the exclusion of James Kelley, Ph.D, from testifying as an expert at trial, the Court will not consider the affidavit of Dr. Kelley [Doc. 63-1] for purposes of the determination of this summary judgment motion. When submitting evidence for purposes of summary judgment the parties are not required to "produce evidence in a form that would be admissible at trial[.]" *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "The proffered evidence need not be in admissible *form*, but its *content* must be admissible." *Bailey v. Floyd Cnty. Bd. of Educ.*, 106 F.3d 135, 145 (6th Cir. 1997) (emphasis in original) (citation omitted). The contents of the affidavit in this case would not be admissible at trial because Dr. Kelley has been excluded from testifying as an expert in the trial of this matter. *C.f. McGuire v. Michigan Dept. of Cmty. Health*, No. 12-1278, 2013 WL 1943892, *2 (where district court failed to consider doctor's letter when court focused only on form and not content of letter and court never made an evidentiary ruling as to the doctor's suitability to serve as an expert witness at trial).

*Cos.*, 8 F.3d 335, 339 (6th Cir. 1993). All facts and all inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Burchett v. Kiefer*, 301 F.3d 937, 942 (6th Cir. 2002). "Once the moving party presents evidence sufficient to support a motion under Rule 56, the non-moving party is not entitled to a trial merely on the basis of allegations." *Curtis Through Curtis v. Universal Match Corp., Inc.*, 778 F. Supp. 1421, 1423 (E.D. Tenn. 1991) (citing *Catrett*, 477 U.S. at 317). To establish a genuine issue as to the existence of a particular element, the non-moving party must point to evidence in the record upon which a reasonable finder of fact could find in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The genuine issue must also be material; that is, it must involve facts that might affect the outcome of the suit under the governing law. *Id.*

The Court's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue of fact a proper question for the factfinder. *Anderson*, 477 U.S. at 250. The Court does not weigh the evidence or determine the truth of the matter. *Id.* at 249. Nor does the Court search the record "to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479–80 (6th Cir. 1989). Thus, "the inquiry performed is the threshold inquiry of determining whether there is a need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a

finder of fact because they may reasonably be resolved in favor of either party."
*Anderson*, 477 U.S. at 250.

## III.  Analysis

Chase moves the Court for an order granting summary judgment because it argues that plaintiffs' claims are baseless and speculative, that Chase is the owner of plaintiffs' loan, and that Chase is in possession of, controls, and holds the Note, which is endorsed in blank, the Deed of Trust, and the Loan Modification Agreement, all executed by plaintiffs.  Therefore, Chase asserts that it is the holder of the Note and Deed of Trust under Tennessee law and that it has the right to enforce those documents, including the right to foreclose upon the Property due to plaintiffs' admitted default.  Alternatively, Chase argues that plaintiffs are judicially estopped from asserting that Chase is not the rightful owner of the loan because Mr. Malin filed a Chapter 7 bankruptcy petition, wherein he asserted, under oath, that Chase was the secured creditor holding the first mortgage on the Property.  Plaintiffs respond that there is a question of fact as to whether Chase is the holder of the Note and Deed of Trust and whether the Note in the possession of Chase's counsel is the original Note.[6]  In plaintiffs' original responsive briefs [Docs. 22, 43], plaintiffs requested additional time to conduct discovery under Rule 56(d) of the

---

[6] Magistrate Judge Guyton set a deadline for the filing of final supplemental material in response to the motion for summary judgment for March 15, 2013, several months after the original December response deadline [Doc. 46].  This extension allowed plaintiffs to file a second amended response to Chase's motion.  Accordingly, to the extent that any arguments, which could potentially be construed as related to the issues presented in the motion for summary judgment, were made in unrelated filings after March 15, 2013, such arguments will not be addressed herein.

Federal Rules of Civil Procedure. The Court will first address this request and will then move on to address the merits of the motion.

## A.    Rule 56(d) Request

Plaintiffs argued in their December and January responses that they were unable to present facts essential to justify their full opposition to the motion for summary judgment. Plaintiffs thus requested that the Court defer ruling on the motion for summary judgment until after they had additional time to conduct discovery related to Chase's ownership of the Note and whether the Note is "accurate, altered, or a forgery" [Doc. 43, p. 8]. When a summary judgment motion is filed, the party opposing the motion may, by affidavit under Rule 56(d) (formerly Rule 56(f)), explain why he or she is unable to present facts essential to justify the party's opposition to the motion. *See Wallin v. Norman*, 317 F.3d 558, 564 (6th Cir. 2003). The Rule provides in pertinent part:

> **(d)    When Facts Are Unavailable to the Nonmovant.**
>
> If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its position, the court may:
>
> > (1)  defer considering the motion or deny it;
> >
> > (2)  allow time to obtain affidavits or declarations or to take discovery; or
> >
> > (3)  issue any other appropriate order.

Fed. R. Civ. P. 56(d).

"Before ruling on summary judgment motions, a district judge must afford the parties adequate time for discovery, in light of the circumstances of the case." *Plott v. Gen. Motors Corp.*, 71 F.3d 1190, 1195 (6th Cir. 1995). However, the party seeking the additional discovery bears the burden of "demonstrat[ing] why such discovery is necessary." *Summers v. Leis*, 368 F.3d 881, 887 (6th Cir. 2004). Bare allegations or vague assertions of the need for additional time for discovery are not enough. *United States v. Cantrell*, 92 F. Supp. 2d 704, 717 (S.D. Ohio 2000) (citing *Lewis v. ACB Bus. Serv., Inc.*, 135 F.3d 389, 409 (6th Cir. 1998)). The Sixth Circuit has found that a party must make such a request with "some precision" and must state "'the materials he hopes to obtain with further discovery and exactly how he expects those materials would help him in opposing summary judgment.'" *Summers*, 368 F.3d at 887 (quoting *Simmons Oil Corp. v. Tesoro Petroleum Corp.*, 86 F.3d 1138, 1144 (Fed. Cir. 1996)); *see also Cacevic v. City of Hazel Park*, 226 F.3d 483, 489 (6th Cir. 2000) (noting that a party making a filing under Rule 56(f) must "indicate to the district court its need for discovery, what material facts it hopes to uncover, and why it has not previously discovered the information" (internal quotations omitted)). The nonmoving party "must show how postponement of a ruling on the motion will enable him to rebut the motion for summary judgment." *Lyons v. Ray*, No. 5:05-405-JMH, 2007 WL 679005, at *4 (E.D. Ky. March 1, 2007) (quoting *Lewis*, 135 F.3d at 409).

Plaintiffs attached the affidavit of plaintiffs' counsel to their original response, wherein counsel submitted that plaintiffs claim that Chase does not own the rights to the

13

Note and Deed of Trust from the FDIC, as WAMU may not have owned the Note when the FDIC started the Receivership [Doc. 21-1, ¶ 5]. Plaintiffs also attached discovery responses by Chase and asserted that they had not yet obtained several requested documents.

This case was filed in November 2011, and Chase's dispositive motion was not filed until November 2012. At the time plaintiffs filed their initial response, and requested that the Court defer ruling on the motion in order to allow them time to take additional discovery, there was a closer question as to whether plaintiffs required additional time. However, at this point, plaintiffs have had several more months, with Judge Guyton extending plaintiffs' discovery deadline to March 8, 2013, and the Court allowing plaintiffs to take a late Rule 30(b)(6) deposition [Docs. 46, 60]. Plaintiffs have also previously been given additional time to disclose expert witnesses, with the scheduling order having been modified to accommodate plaintiffs. Moreover, one of the primary assertions by plaintiffs for why they needed additional time was to take the deposition of Chase employee Kendall Foster, and they have now done so. Judge Guyton allowed plaintiffs to file additional responsive documents for one week following the new extended discovery deadline, and they did so. Accordingly, the Court finds that plaintiffs' request that the Court defer ruling on the motion pursuant to Rule 56(d) is no longer relevant and hereby denies that request.

14

## B.    Adam Malin Affidavit

As discussed above, plaintiffs attached the affidavit of their son, Adam Malin, to one of their earlier responses in opposition to the motion for summary judgment.  Chase has argued that the affidavit should be stricken and not considered by the Court.   In February 2011, plaintiffs disclosed Adam Malin as an expert witness.   Following the filing of Chase's reply requesting that the affidavit be stricken, Chase filed both a motion to exclude Adam Malin from testifying as an expert at trial [Doc. 65] and a motion *in limine* to limit Adam Malin's testimony at trial to the opinions expressed in his affidavit [Doc. 72].  Chase points out that Adam Malin's affidavit and opinions expressed therein are based on his review of a scanned copy of the original Note, which was sent from defense counsel to plaintiffs' counsel, and that opening the scanned copy in Adobe Illustrator showed that it contained "layers."   In its motion to limit his testimony, Chase cited Adam Malin's deposition testimony that his sole purpose in reviewing the scanned copy of the Note was to attempt to help his parents in their lawsuit and that the use of the computer programs he utilized requires some training, as the average person on the street could not use them.

Judge Guyton's Memorandum and Order [Doc. 84] indicates that, at the hearing held on the motion, plaintiffs' counsel represented that Adam Malin would not testify that the Note is a forgery and would not give expert testimony at trial.   Accordingly, the parties agreed that the motion to exclude him as an expert would be granted and that the motion limiting his testimony to the opinions expressed in his affidavit would be denied

15

as moot.  Consistent with Judge Guyton's ruling on those motions, as well as his denial of the motion to exclude Jason Smith as an expert, because Mr. Smith would not opine as to whether a document was "altered" or a "forgery" and because defense counsel had deposed Mr. Smith, the Court will consider the facts contained in Adam Malin's affidavit.  Adam Malin is not being offered as an expert in this case, and the facts related to his personal knowledge from looking at the scanned computer document is relevant and would likely in some form be admissible at the trial of this matter.

### C.    Holder of the Note and Deed of Trust

Turning to the merits of the motion for summary judgment, Chase argues that all of plaintiffs' remaining claims are premised upon the argument that Chase is not in possession of and is not the holder of the Note and Deed of Trust.  Chase cites to the affidavit of Kendall Foster, wherein she swore that the loan evidenced by the Note, Deed of Trust, and Loan Modification Agreement was purchased by Chase, together with all other loans and loan commitments of WAMU, pursuant to the PAA between Chase and the FDIC, as Receiver of WAMU.  Chase also argues that it is in possession of, controls, and holds the original Note, Deed of Trust, and Loan Modification Agreement.  Chase points out that the Note is endorsed in blank from WAMU, executed by "Jess Almanza, VP," and that Chase, through its ownership of the loan and physical possession of the Note endorsed in blank, has the right to enforce the Note, including the right to foreclose on the Property.

16

Plaintiffs respond in two primary ways: (1) the Note is not a negotiable instrument under Tennessee law, and (2) there is a question of fact as to whether Chase is in possession of and owns the original Note.

### 1.     Negotiable Instrument

Tennessee Code Annotated § 47-3-104(a), "Negotiable instrument," provides:

> (a) Except as provided in subsections (c) and (d), "negotiable instrument" means an unconditional promise or order to pay a fixed amount of money, with or without interest or other charges described in the promise or order, if it:
>
> (1) Is payable to bearer or to order at the time it is issued or first comes into possession of a holder;
>
> (2) Is payable on demand or at a definite time; and
>
> (3) Does not state any other undertaking or instruction by the person promising or ordering payment to do any act in addition to the payment of money, but the promise or order may contain (i) an undertaking or power to give, maintain, or protect collateral to secure payment, (ii) an authorization or power to the holder to confess judgment or realize on or dispose of collateral, or (iii) a waiver of the benefit of any law intended for the advantage or protection of an obligor.

Plaintiffs argue that the Note is not a negotiable instrument under the statute because the Note fails to provide for the payment of "a fixed amount of money" and states additional "undertakings," "instructions," or acts [Doc. 43, p. 10].  Because plaintiffs contend that the Note is not a negotiable instrument under Tennessee law, they "assert 'equities and defenses' that WAMU did not own plaintiffs' promissory note and accompanying deed of trust when it was closed by FDIC; therefore FDIC had nothing in plaintiffs' promissory note to transfer to Chase.  Chase never purchased plaintiffs' promissory note and

17

corresponding deed of trust. A second defense is the scan of the original promissory note had discrepancies and questions of authenticity that plaintiffs need to discover" [*Id.*, p. 11].

Chase asserts that the Note in this case is an order to pay a fixed amount of money, with interest as described in the Note, as the Note states that plaintiffs promised to pay $525,000.00, with interest. The Note further provides, "If on November 1, 2033, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the 'Maturity Date'" [Doc. 19-3, p. 1]. Chase submits that plaintiffs appear to assert that they have additional undertakings under the Note based upon the prepayment addendum, allowing prepayment and requiring them to inform the Note Holder when they are making a prepayment. Chase argues, however, that Tennessee law includes rights and obligations related to prepayments within the definition of "negotiable instrument." [Doc. 44, p. 8 (citing Tenn. Code Ann. § 47-3-106(b) (a promise is not made conditional by reference to another document with respect to collateral, prepayment, or acceleration; Tenn. Code Ann. § 47-3-108(b) (a promise is "payable at a definite time" subject to the right of prepayment))]. Chase additionally cites several cases from other courts supporting the proposition that a requirement of notification in the event that a party opts for prepayment does not impose liability on the party and is not a condition upon the party's promise to pay.

18

Under Tennessee law, a "person entitled to enforce" a note includes the "(i) the holder of the instrument, (ii) a nonholder in possession of the instrument who has the rights of a holder, or (iii) a person not in possession of the instrument who is entitled to enforce the instrument pursuant to § 47-3-309 or § 47-3-418(d)." Tenn. Code Ann. § 47-3-301. This "includes any other person who under applicable law is a successor to the holder or otherwise acquires the holder's rights." *Id.* cmt. 1. When a note is endorsed in blank without recourse, as here, it is payable to the bearer, Tenn. Code. Ann. § 47-3-205(b), and the bearer is entitled to enforce the note as the holder, Tenn. Code. Ann. §§ 47-1-201(21)(A), 47-3-301. Further, "[a]n instrument is transferred when it is delivered by a person other than its issuer for the purpose of giving to the person receiving delivery the right to enforce the instrument." Tenn. Code Ann. § 47-3-203(a). "[W]hether or not the transfer is a negotiation, [the transfer] vests in the transferee any right of the transferor to enforce the instrument, including any right as a holder in due course . . . ." Tenn. Code Ann. § 47-3-203(b).

In this case, the PAA as well as the affidavit of Kendall Foster indicate that Chase purchased all loans and loan commitments of WAMU, including the specific loan evidenced by the Note, Deed of Trust, and Loan Modification Agreement. The Foster affidavit also evidences that Chase is in possession of, controls, and holds the original Note, Deed of Trust, and Loan Modification Agreement, with the Note endorsed in blank

19

from WAMU.  Although plaintiffs allege to some extent that WAMU was not the holder of the Note prior to going into Receivership of the FDIC, such that Chase could not have obtained the Note from the FDIC pursuant to the PAA, plaintiffs have produced no evidence to rebut the Foster affidavit, the affidavit of Robert Shoppe of the FDIC, and the contents of the documents themselves, all indicating that WAMU owned the original Note, which became property of the FDIC and then Chase.

Moreover, the Note and Loan Modification Agreement are negotiable instruments under Tennessee law.  Upon review of the copies of the documents in the record, they contain unconditional promises for plaintiffs to pay a fixed sum of money, with interest, they were payable to the order of WAMU at the time they were executed, and the payments were due at definite times.  As the evidence supports a finding that Chase is the holder of the Note, which is endorsed in blank, Chase is entitled to enforce the Note and Deed of Trust.  *See Devoe v. Nationwide Tr. Servs., Inc.*, No. 3:09-CV-291, 2012 WL 1565436, at \*3 (E.D. Tenn. May 1, 2012).

### 2.    The Original Note

While the Court has found that Chase is the holder of the Note and is entitled to enforce the same, plaintiffs contend that there is a question of fact as to whether Chase is in possession of the authentic and original Note.  In support, plaintiffs have submitted the

20

affidavit of Adam Malin, asserting that he observed Adobe Illustrator "layers" of documents on the scanned copy of the Note emailed from defense counsel to plaintiffs' counsel. Plaintiffs also submitted the affidavit of Dr. Kelley; however, as described *supra* fn. 5, this evidence has been ruled inadmissible at trial and will not be considered here.

At their depositions, when presented with what Chase asserts is the original Note, both plaintiffs testified that the signatures on the Note were their signatures. Mrs. Malin felt the page and testified that the page was "bumpy" behind the signature line. Adam Malin's affidavit was based on a scanned copy of the Note, and he had not examined or compared the original Note when he made his affidavit. Kendall Foster's affidavit indicates that she had reviewed the applicable records and that Chase was in possession of the physical original Note, Deed of Trust, and Loan Modification Agreement. The affidavit goes on to indicate that the original Note had been forwarded to defense counsel. Accordingly, the evidence of record shows that defense counsel was in possession of the Note and showed it to plaintiffs at their depositions, during which they both observed the Note and indicated that they had no basis to argue that it was not the actual Note.

Upon review of the record in totality, despite making inferences in plaintiffs' favor, it does not appear that a genuine issue of material fact exists as to whether the Note

in possession of Chase is the actual Note and not a forgery.[7]  Plaintiffs have had the opportunity to observe and examine the physical Note, and Adam Malin's affidavit is based upon review of a scan.  Ms. Foster's affidavit has not been rebutted.  While plaintiffs' counsel has represented in his latest response that he believed that she at one point testified that she could not positively say Chase had the original Note, as discussed *supra* fn. 3, not only did defense counsel argue that Ms. Foster had actually testified that she had not been physically watching the filing of motions by defense counsel, but her deposition transcript is not in the record before the Court.[8]

---

[7] In support of plaintiffs' appeal of Judge Guyton's order excluding Dr. Kelley, plaintiffs cited extensively to court documents from *McDonald v. OneWest Bank, FSB*, No. C10-1952RSL, a currently pending case out of the United States District Court for the Western District of Washington.  Those documents were filed without requests for leave to supplement the record related to the motion for summary judgment.  However, the Court will nonetheless distinguish that case from the case at issue here.  It appears that the court in *McDonald* found that there was sufficient evidence to show that several of the affidavits and testimony on behalf of the bank had been false, such that there was a question of fact as to whether the bank was in actual possession of the original promissory note.  The court also found that the defendants had inexcusably delayed in producing the original note.  In this case, Chase brought the original Note to the depositions of both plaintiffs, as well as to the deposition of plaintiffs' purported expert, for inspection.  The scanned and emailed copy of the Note, which defense counsel provided upon request in the vehicle through which it was requested, is what plaintiffs here seek to use to create an issue of fact as to the original Note's authenticity.  Moreover, there is no evidence before the Court that Chase or its employees have lied under oath in depositions or by affidavit.  For those reasons, among others, the Court reaches a different conclusion than the District Court for the Western District of Washington.

[8] Plaintiffs have recently made allegations related to the filings of documents in plaintiffs' bankruptcy proceedings [*see* Docs. 87, 90, 96].  As stated above, Judge Guyton set a firm deadline of March 15, 2013, for the filing of any supplemental documents in opposition to summary judgment.  Plaintiffs have not filed any motions for leave to supplement their prior filings in opposition to Chase's motion for summary judgment, and any allegations related to discrepancies in bankruptcy filings were made in relation to other motions and requests for relief.  Accordingly, the Court will not address such arguments herein.

22

Thus, as the Court has found that Chase is the holder of the Note and that a genuine issue of material fact does not exist as to whether the Note in Chase's possession is the original Note, the Court finds that Chase has the right to enforce the Note, inclusive of the right to foreclose on the Property.

### D.     Judicial Estoppel

Because the Court finds that Chase is the holder of the Note and entitled to enforce the same, the Court need not address Chase's argument that plaintiffs are judicially estopped from asserting that Chase is not the holder of the Note.

## IV.    Conclusion

For the reasons stated herein, the Court will **GRANT** the Motion for Summary Judgment of Defendant JPMorgan Chase Bank, N.A., for Itself and as Successor by Merger to Chase Home Finance, LLC [Doc. 19] in all respects.

ORDER ACCORDINGLY.


s/ Thomas A. Varlan_____
CHIEF UNITED STATES DISTRICT JUDGE